**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOSE REYES,<br><br>Plaintiff<br><br>v.<br><br>KOST TIRES & AUTO SERVICE, et al,<br><br>Defendants. | CIVIL ACTION NO. 3:25-CV-1782<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Presently before the Court is a motion to dismiss brought by Defendants Kost Tire & Auto Service ("Tire & Auto"), Kost Tire Distributors, Inc. ("Distributors"), Kost Tire/Muffler, Inc. ("Tire/Muffler"), and Joseph Lordi ("Lordi") (collectively, "Defendants"). (Doc. 14). Plaintiff Jose Reyes ("Reyes") originally initiated this action on September 24, 2025. (Doc. 1). Reyes filed the operative amended complaint on October 23, 2025. (Doc. 8). For the following reasons, Defendants' motion to dismiss is denied. (Doc. 14).

## I. BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from Reyes' amended complaint and accepted as true for purposes of this motion. (Doc. 8). In January 2025, Defendants hired Reyes, a Hispanic male from Puerto Rico with an African American ancestral background. (Doc. 8, ¶¶ 16-18). Reyes performed his job well before his unlawful termination in July 2025. (Doc. 8, ¶¶ 19-20). Defendants' workplace consisted of very few minority employees. (Doc. 8, ¶¶ 23-24). Throughout his employment, Reyes was subjected to mistreatment due to his race and national origin, such as rude behavior, grueling tasks, and racial commentary. (Doc. 8, ¶ 25). Halfway through his employment, Reyes brought several complaints because he felt the

mistreatment was "racist" and informed management that he may file a complaint of discrimination with the EEOC. (Doc. 8, 27-28). After Reyes complained to management, Defendants did not investigate or address the discrimination, which worsened. (Doc. 8, ¶¶ 29-30).

On July 17, 2025, two days after he informed Defendants that he filed a charge of racial discrimination with the EEOC, Reyes lost his job. (Doc. 8, ¶¶ 33-35). Defendants provided that Reyes was terminated because he allegedly called Brandon Fritsch ("Fritsch"), a manager, a "n-word." (Doc. 8, ¶ 36). Reyes denies this ever happened since he has an African-American ancestral background, Fritsch is Caucasian, and made previous complaints about the use of the same disparaging term. (Doc. 8, ¶ 36). Before Reyes' termination, Defendants called the police to have Reyes escorted from the premises. (Doc. 8, ¶ 39). Defendants never terminated Fritsch. (Doc. 8, ¶ 40).

On September 24, 2025, Reyes filed the original complaint. (Doc. 1). On October 23, 2025, Reyes filed an amended complaint. (Doc. 8). On December 12, 2025, Defendants filed the instant motion to dismiss. (Doc. 14). On December 22, 2025, Defendants filed a brief in support of the motion to dismiss. (Doc. 15). On January 5, 2026, Reyes filed a brief in opposition. (Doc. 16). Defendants did not file a reply brief. Accordingly, the motion is ripe for discussion.

## II. LEGAL STANDARD

### A. MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first

take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting

*Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

B. 42 U.S.C. SECTION 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
>
> 42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the

United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III. DISCUSSION

### A. DEFENDANTS' MOTION TO DISMISS THE RACIAL DISCRIMINATION CLAIMS BOTH UNDER TITLE VII AND § 1981 IS DENIED.

A *prima facie* case of employment discrimination requires a showing that: (1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (citations omitted). To establish a racial discrimination claim under § 1981, "a plaintiff must show (1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981." *Estate of Olivia ex rel. McHugh v. New Jersey*, 604 F.3d 788, 797 (3d Cir. 2010). "[W]e have previously held that the substantive elements of a claim under § 1981 are generally identical to the elements of an employment discrimination claim under Title VII." *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009). In evaluating whether a claim of racial discrimination survives a Rule 12(b)(6) dismissal, courts must determine whether the plaintiff has alleged "sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Shropshire v. Gallaway*, 855 F. App'x 853, 855 (3d Cir. 2021) (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)).

At the motion to dismiss stage, plaintiffs in employment cases are "not required to establish a prima facie case, much less to engage in the sort of burden-shifting rebuttal that

*McDonnell Douglas* requires at a later stage in the proceedings." *Connelly*, 809 F.3d at 791. They need only "plead facts that, construed in her favor, state a claim of discrimination that [are] 'plausible on its face.'" *Connelly*, 809 F.3d at 791 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court has "rejected the argument that a Title VII complaint requires greater 'particularity,' because this would 'too narrowly constric[t] the role of the pleadings.'" *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002) (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283, n. 11, 96 (1976)). It is simply "the ordinary rules for assessing the sufficiency of a complaint [that] apply." *Swierkiewicz* 534 U.S. at 511. In order to survive a motion to dismiss, "it is sufficient to allege a prima facie case . . . . [b]ut it is not necessary." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (citing *Castleberry v. STI Grp.*, 863 F.3d 259, 266 (3d Cir. 2017)).

**1. Adverse Action**

Defendants argue that Reyes "does not sufficiently claim that any action taken against him were in part, or on the whole, pursued because of his belonging to a protected class." (Doc. 15, at 13). Reyes counters that this element is uncontested. (Doc. 16-1, at 15). In the motion to dismiss stage, "the but-for burden is slightly less rigorous[;]" however, it is still necessary that "plaintiffs must initially plead that 'but for race, it would not have suffered the loss of a legally protected right.'" *Williams v. Century Sec. Servs., Inc.*, No. 24-CV-00385, 2025 WL 84142, at *3 (M.D. Pa. Jan. 13, 2025) (quoting *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020)). At this stage in the proceedings, "multiple but-for reasons" for the adverse action are adequate, and the facts raised by a plaintiff are "sufficient"

if they "raise the inference that her protected activity was the likely reason for the adverse [employment] action." *Williams*, 2025 WL 84142, at *3 (quotation omitted).

Reyes has properly pled facts that allow the Court to infer the necessary but-for cause at this stage in the litigation. Reyes alleges that he was falsely terminated for calling an employee the "n-word," days after Reyes had informed the Defendants that he had filed an EEOC charge. (Doc. 8, ¶¶ 28-36). Reyes further pled that he reported uninvestigated racial harassment, use of the "n-word" towards him, as well as a penchant for assigning him physically demanding tasks, such as back-to-back tire changes that were not assigned to his Caucasian counterparts. (Doc. 8, ¶¶ 25-32). Taking the allegations as true, the Court cannot say at this stage whether Reyes would be "unable to prove facts that show purpose or intent to discriminate." *Williams*, 2025 WL 84142, at *3. Reyes has sufficiently shown that, but for his race under the totality of the circumstances, rude and unprofessional remarks about his race that were allegedly not investigated, coupled with termination days after filing an EEOC complaint to that effect, is adequate to survive, even if there was another reason for termination. *See Williams*, 2025 WL 84142, at *4 (holding dismissal for purposeful discrimination would be inappropriate at a motion to dismiss due to allegations of racist comments even with the revelation of a criminal record as an alternative rationale for termination). The Court may contemplate more than one "but-for rationale involved in [the] decision." *Williams*, 2025 WL 84142, at *4 (citing *Bostock v. Clayton Cnty*., Georgia, 590 U.S. 644, 656 (2020)).

**2. Non-Class Members Treated More Favorably**

Under the fourth prong, Defendants contend that Reyes fails to sufficiently allege facts that show "similarly situated non-members of the protected class were treated more

favorably." (Doc. 15, at 11-12). Reyes argues that his treatment compared to "his non-Hispanic colleagues" satisfies a claim for racial discrimination. (Doc. 16-1, at 18). "Several facts alleged, taken together, create an inference of intentional discrimination sufficient to withstand dismissal." *Olivetti v. Jewish Fed'n of Ne. Pennsylvania*, 2024 WL 555889, at *3 (M.D. Pa. Feb. 12, 2024) (finding that allegations that non-Jewish co-workers was sufficient to avoid dismissal in that they were treated differently by not subjecting her co-workers to "similar hostile or abusive conduct."). While there may be "perfectly neutral, nondiscriminatory reasons for Plaintiffs' adverse employment actions," it is the Defendants' "burden to carry" this showing. *Castleberry v. STI Grp.*, 863 F.3d 259, 266 (3d Cir. 2017). At this stage, even if Defendants produce alleged nondiscriminatory reasons for the comparative treatment allegations, "Plaintiffs still would have been afforded the opportunity to rebut the stated reasons as pretextual following discovery." *Castleberry*, 863 F.3d at 266.

Here, Reyes has made factual allegations that must be taken as true. Reyes was spoken to and treated in an "unprofessional manner, especially compared to his non-Hispanic colleagues." (Doc. 8, at ¶ 25(a)). In comparison to his non-Hispanic counterparts, Reyes was "assigned the most grueling, difficult, and least desirable jobs," specifically "back-to-back tire changes causing him significant bodily strain." (Doc. 8, at ¶ 25(b)-(c)). At this stage, Reyes is not required to make a *prima facie* showing, merely that there are "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (internal quotations omitted). Because Reyes has made the necessary factual showing, Defendants' motion to dismiss the race discrimination claims under Title VII and § 1981 should be **DENIED**. (Doc. 14).

B. DEFENDANTS' MOTION TO DISMISS THE HOSTILE WORK ENVIRONMENT CLAIMS BOTH UNDER TITLE VII AND § 1981 IS DENIED.

A plaintiff can establish a violation both under Title VII and § 1981 if he or she can show that discrimination based on a protected characteristic fostered a hostile work environment. *See Wilson v. Columbia Gas of Pennsylvania*, 676 F. Supp. 3d 424, 441 (W.D. Pa. 2023) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)). To prevail on a claim alleging a hostile work environment on the basis of race, a plaintiff must show that "'(1) the employee suffered intentional discrimination because of his/her [race], (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability [meaning the employer is responsible]." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)). The plaintiff must suffer from discrimination that is "motivated by [his] membership in a protected group" *Syed v. YWCA of Hanover*, 906 F. Supp. 2d 345, 355 (M.D. Pa. 2012). The Third Circuit has pointed to identification of "race-based intimidation, ridicule, or insult[s] that occurred at [the] workplace" as sufficient to establish a claim under this element. *Mazur v. Sw. Veterans Ctr.*, 803 F. App'x 657, 662 (3d Cir. 2020). However, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discrimination." *Syed*, 906 F. Supp. 2d at 355. "[U]npleasant" behavior is "not prohibited by Title VII if not motivated by the plaintiff's [membership in a protected group]." *Syed*, 906 F. Supp. 2d at 355.

The allegations regarding the behaviors of Reyes' coworkers are taken as true. These actions are most likely based on Reyes's status in a protected class. *Syed*, 906 F. Supp at 355). Reyes is a Hispanic male and identifies as multi-racial "because his grandfather is African American." (Doc. 8, ¶ 16-17). The repeated use of the "n-word" directed at Reyes weekly is

sufficient to establish the first prong at this stage of litigation. (Doc. 8, ¶¶ 25(d)-(e),44). This type of treatment goes beyond "simple teasing and off-hand comments" *Syed,* 906 F. Supp. At 355. For this to occur in the work environment, directed at Reyes, shows "race-based intimidation [and] ridicule." *Mazur*, 803 F. App'x at 662. Despite Defendants' contention that Reyes did not plead sufficient facts, this satisfies the first element.

The second prong requires the discriminatory behavior to be severe or pervasive. The "or" distinction is "meaningful" since "isolated incidents (unless extremely serious) will not amount to [harassment]." *Castleberry*, 863 F.3d at 264. The Court must look to "the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Castleberry*, 863 F.3d at 264 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The Third Circuit has been clear that using the "n-word" in a "single instance" must be viewed in a "context specific" fashion and "it is clear that one such instance can suffice to state a claim." *Castleberry*, 863 F.3d at 264. If a plaintiff pleads only "isolated incidents," then they must be extreme enough to "amount to a change in the terms and conditions of employment." *Castleberry*, 863 F.3d at 264.

The severe or pervasive element can be satisfied by either a single instance of discrimination (depending on its severity) or a series of discriminatory occurrences. The use of the "n-word" can satisfy either scenario. *Castleberry*, 863 F.3d at 264. Reyes has alleged more than one incident of use of the "n-word." (Doc. 8, ¶¶ 25(d)-(e),44). Accepting Reyes's claims as true, the frequency of this behavior occurred on a weekly basis over the course of six months. (Doc. 8, ¶ 44). In view of the "totality of circumstances" and the "frequency" at which Reyes alleges he was subjected to these "humiliating" comments, they clearly would

affect his job performance. *Castleberry*, 863 F.3d at 264. Reyes alleges he continually complained about the behavior to Defendants, to no avail. (Doc 8, ¶ 29). Additionally, one of the final incidents between Reyes and one of the employees, who was allegedly the most frequent user of the "n-word" toward Reyes, consisted of near physical threats, verbal threats, and being told if he "did not want to do his job he could go home." (Doc. 8, ¶ 37). Reyes maintains, which must be taken as true, he was not the aggressor in any way but was escorted from the premises by the police for what he believed were "racial stereotypes." (Doc. 8, ¶ 39). In light of the totality of circumstances, the repeated use of the "n-word" and actions directed at the Reyes satisfy the severe or pervasive element.

The third and fourth elements are a subjective and objective test, respectively. First, under the subjective test, whether a "reasonable factfinder" could conclude that the discriminatory behavior would "detrimentally affect[]" Reyes. *Syed*, 906 F. Supp. 2d at 357. This can include feelings of "humiliation, . . . emotional distress, loss . . . of [significant] amount of weight, sought medical assistance . . . ." *Syed*, 906 F. Supp. 2d at 357. The Third Circuit looks to whether "[he] perceived [himself] to be subject to an abusive environment as manifested through her co-workers' and supervisors' interaction with [him]." *Spain v. Gallegos*, 26 F.3d 439, 449 (3d Cir. 1994) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)). Next, the objective test determines whether the alleged discrimination directed at Reyes "be such that it would have detrimentally affected a reasonable person of the same protected class as the plaintiff." *Syed*, 906 F. Supp. 2d at 357 (citing *Harris*, 510 U.S. at 21-22). At this stage in the proceedings, the court, taking the pleadings as true, must determine whether a "reasonable person in [plaintiff's] position would have been detrimentally affected by the environment she faced." *Syed* 906 F. Supp. 2d at 357 (citing *Spain*, 26 F.3d at 450).

Looking at Reyes's position both subjectively and objectively, and taking the pleadings as true, a reasonable person could clearly determine that both are satisfied. Under the subjective test, it does not take any stretch of imagination for a person who is Hispanic and identifies with his African American heritage (Doc. 8, ¶¶ 16-17) to feel "humiliation" and "emotional distress" for allegedly being repeatedly subjected to the "n-word" at his job every week for six months. (Doc. 8, ¶ 44). *Syed*, 906 F. Supp. 2d at 357. Subjectively, his perception of his interactions with his supervisors and co-workers on the face of his pleadings satisfies this prong. Similarly, the objective element is also satisfied. The question for the Court is whether a "reasonable person" in Reyes's position would also be "detrimentally" affected by the alleged discriminatory behavior. *Syed* 906 F. Supp. 2d at 357. Again, it is clearly not inconceivable for a reasonable person, with Reyes's ancestral background, subjected to discriminatory conduct (taken as true in the pleadings), to be detrimentally affected. The third and fourth elements are fulfilled.

The final element, *respondeat superior*, can be satisfied in two ways and depends on whether the alleged hostility stems from Reyes's supervisors or co-workers. Taking the pleadings on their face, the second scenario is at issue. When looking at whether the "employer will be liable for harassing conduct committed by a victim's coworkers" the Court must determine that the "employer was negligent or reckless" if it "fail[ed] to train, discipline, fire or take remedial action upon notice of harassment." *Peace-Wickham v. Walls*, 409 F. App'x 512, 519 (3d Cir. 2010) (citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 26 (3d Cir.1997)). Additionally, at the motion to dismiss stage, "[u]nder the *McDonnell-Douglas* framework, a claim of employment discrimination necessarily survives . . . so long as the requisite prima facie elements have been established." *Castleberry*, 863 F.3d at 266 (citing *Swierkiewicz v.*

*Sorema N.A.*, 534 U.S. 506, 512 (2002)). A plaintiff may have difficulties "prov[ing] discrimination [b]efore discovery has unearthed relevant facts and evidence." *Castleberry*, 863 F.3d at 266.

Here, despite the supervisory titles given to various employees, Lordi appears to be the only one with actual supervisory capacity over Reyes on the face of the pleadings. (Doc. 8, ¶ 22). Reyes appears to plead under the second theory that Defendant Lordi failed to investigate the discrimination charges Reyes initiated against the employees. (Doc. 8, ¶ 46). Taken as true, Defendant employee Brandon Fritsch is named repeatedly for use of the "n-word." (Doc. 8, ¶¶ 25-26.). Reyes asserts that he reported this conduct to Lordi, and taking the pleading as true, Lordi did not follow up with in-store management or investigate the claims as he told Reyes. (Doc. 8, ¶¶ 31-32). Failing to investigate the charges alone is enough to meet the necessities of the fifth prong. *Peace-Wickham* 409 F. App'x at 519. In fact, within days, Reyes filed his EEOC formal charges and was terminated. (Doc. 8, ¶¶ 33-35). Defendants contend that sufficient facts were not pleaded to show Lordi "did not take remedial steps." However, it is sufficient for Reyes to survive the motion to dismiss "so long as the requisite prima facie elements have been established" as employment discrimination may be difficult to prove without the necessary discovery. *Castleberry*, 863 F.3d at 266. Here, those elements are established by the alleged discriminatory harassment from Reyes's co-workers and the lack of any evidence of follow-up by Lordi (and indeed, Reyes was fired shortly after making the complaint). With *respondeat superior* established, all five elements are satisfied for a hostile work environment claim. Defendants' motion to dismiss the hostile work environment charges should be **DENIED**. (Doc. 14).

C. DEFENDANTS' MOTION TO DISMISS THE RETALIATION CLAIMS BOTH UNDER TITLE VII AND § 1981 IS DENIED.

In order to for the plaintiff to establish a *prima facie* case that he was fired in retaliation for reporting racial discrimination, he must show the following: "'(1) [he] engaged in [protected] activity ...; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action.'" *Castleberry*, 863 F.3d at 267 (quoting *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006)). The same analysis applies to both Title VII and § 1981 retaliation cases. *Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 n. 14 (3d Cir. 2010).

The first prong of the protected activity is not contested. A *prima facie* case is shown both by plaintiff's "informal . . . protest[] of discriminatory employment practices, including making complaints to management" as well as a plaintiff's "formal filing of charges of discrimination" to the EEOC. *Daniels v. Sch. Dist. of Phila*, 776 F.3d 181, 193 (3d Cir. 2015). Reyes sufficiently pleads that he made informal complaints to management of discriminatory behavior as well as notifying management of intent to file a formal charge of discrimination (Doc. 8, ¶¶ 28, 30-31). Reyes also sufficiently pleads that he informed management of filing a formal charge of discrimination with the EEOC. (Doc. 8, ¶¶ 33-34).

The second prong is also easily established satisfied: an adverse action occurred. Termination from his job is considered a "materially adverse action." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007). Reyes was terminated on or about July 17, 2025, about two days after filing his formal charges with the EEOC. (Doc. 8, ¶ 35). This satisfies the "materially adverse action" taken against the plaintiff. *LeBoon* 503 F.3d at 232. As for the third prong, the plaintiff must only show that "his engagement in protected activity was the likely reason for the adverse employment action." *Branch v. Temple Univ.*, 554

F. Supp. 3d 642, 655 (E.D. Pa. 2021) (citing *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 253 (3d Cir. 2017)). This can be shown by "a pattern of antagonism" or even "[a]n employer's failure to investigate an employee's complaint." *Stankiewicz v. Pump N' Pantry, Inc.*, No. 3:20-CV-2021, 2022 WL 36238, at *3 (M.D. Pa. Jan. 4, 2022) (citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 921-22 (3d Cir. 1997)).

For the third element regarding temporal proximity, the Court must conduct a "highly fact-based" analysis of "the particular context in which the events occurred." *Williams v. Century Sec. Servs., Inc.*, No. 24-CV-00385, 2025 WL 84142, at *6 (M.D. Pa. Jan. 13, 2025) (citing *Mercer v. Se. Pennsylvania Transit Auth.*, 26 F. Supp. 3d 432, 447 (E.D. Pa. 2014), *aff'd sub nom*. *Mercer v. SEPTA*, 608 F. App'x 60 (3d Cir. 2015)). The "temporal proximity between the protected activity and adverse action" can certainly be "unusually suggestive" *Williams*, No. 24-CV-00385 at *6 (citing *Sousa v. Amazon.com, Inc.*, No. 22-3043, 2023 WL 7486751, at *4 (3d Cir. Nov. 13, 2023) (quoting *LeBoon*, 503 F.3d at 232-33)). While the "temporal proximity between the protected activity and the termination is sufficient to establish a causal link, but also that 'the mere passage of time is not legally conclusive proof against retaliation.'" *Branch*, 554 F. Supp. 3d at 655 (citing *Robinson v. SEPTA*, 982 F.2d 892, 894 (3d Cir. 1993)).

Defendants argue that Reyes has not "established a specific timeline," (Doc. 15, at 18). However, this conflicts directly with the specific dates provided in the amended complaint, which the Court accepts as true, and Reyes must only establish a *prima facie* showing "that [his] protected action was the likely reason for the adverse action". *Stankiewicz*, 2022 WL 36238 at *3. Not only did Reyes inform Defendants of his intention to file a complaint with the EEOC in Spring 2025, but also on or about July 15, 2025, he actually filed the complaint

and "informed Defendants' managers about this filing." (Doc. 8, ¶¶ 31, 33). Even before the formal EEOC charge, Reyes asserts that he texted with Lordi about the harassment and racial discrimination Reyes experienced at work. (Doc. 8, ¶ 31). There was no follow-up investigation. (Doc. 8, ¶ 32). The failure of the employer to "investigate an employee's complaint" can also directly support the inference of employer retaliation. *Stankiewicz*, 2022 WL 36238 at *3. Finally, the "usually suggestive temporal proximity" between Reyes's report to the EEOC and his termination just two days later satisfies the third prong. (Doc. 8, ¶ 35).

The "temporal proximity" alone is not enough to sustain a charge of retaliation. However, coupled with the additional asserted evidence, Reyes presents sufficient evidence to sustain a *prima facie* showing at this stage in the proceedings for a retaliation charge. *Branch*, 554 F. Supp. 3d at 655. As such, all three prongs are satisfied, and Defendants' motion to dismiss the retaliation charges should be **DENIED**. (Doc. 14).

D. DEFENDANTS' MOTION TO DISMISS LORDI INDIVIDUALLY AS TO ALL CLAIMS IS DENIED.

Defendants fail to cite caselaw explaining why Lordi should be dismissed as individually liable under the § 1981 claims. (Doc. 15, at 18-19). Defendants contend that Defendant Lordi did not have sufficient involvement to be personally liable, as Reyes' allegations do not include any discriminatory actions toward Reyes on his part. (Doc. 15, at 19). Reyes counters that a "manager's deliberate indifference to, or participation in, a subordinate's acts of racially motivated conduct" is sufficient to maintain the claim for individual liability under § 1981. (Doc. 16-1, at 24). A claim of liability under § 1981 is similar to "'§ 1983, and cannot be imposed vicariously.'" *Ismail v. Honeywell Int'l, Inc.*, No. 1:21-CV-00143, 2023 WL 2385135, at *5 (M.D. Pa. Mar. 6, 2023) (quoting *Boykin v. Bloomsburg University of Pennsylvania*, 893 F. Supp. 378, 394 (M.D. Pa. 1995)). "Personal involvement of

a defendant is essential." *Boykin* 893 F. Supp. at 406 (citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 735 (1989)). An individual "can face personal liability under Section 1981 if they cause an intentional infringement of an individual's Section 1981 rights or if they authorized, directed, or participated in the alleged discriminatory conduct." *Ismail*, 2023 WL 2385135, at *5 (quotation omitted) (citing *Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986) aff'd, 481 U.S. 604 (1987)). Here, Reyes pled that he raised his concerns about the racially discriminatory treatment he received directly to Lordi, and no follow-up or investigation was initiated or completed by Lordi. (Doc. 8, at ¶ 31-32). Reyes has pleaded sufficient facts for this stage of the litigation to show personal involvement. *See Cardenas v. Massey*, 269 F.3d 251, 269 (3d Cir. 2001) (holding there may be sufficient facts to find a supervisor individually liable as deliberately indifferent based on intentional discrimination if the supervisor was aware of the intentional racial discrimination, personally controlled assignments that contributed to the discrimination, and approved alleged disparate performance reviews by his employees). Accordingly, Defendants' motion to dismiss defendant Lordi as an individual defendant should be **DENIED**. (Doc. 14).

E. DEFENDANTS' MOTION TO DISMISS CLAIM FOR PUNITIVE DAMAGES IS DENIED.

Defendants contend that Reyes should not recover punitive damages because Reyes has not shown that Defendants acted with the requisite "malice and reckless indifference" required for intentional discrimination or retaliation claims. (Doc. 15, at 20). Reyes responds that the alleged facts pled are sufficient at this stage of the litigation to show that punitive damages are warranted. (Doc. 16-1, at 25). A plaintiff is permitted to "seek punitive damages under Title VII and Section 1981 . . . for claims of intentional discrimination . . . [but] must 'demonstrate that the defendant "engaged in a discriminatory practice or discriminatory

practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Johnson v. Fed. Exp. Corp.*, 996 F. Supp. 2d 302, 321 (M.D. Pa. 2014), *aff'd*, 604 F. App'x 183 (3d Cir. 2015) (quoting *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 534 (1999)). The inquiry into the terms "malice" and "reckless" looks at "whether the defendant employer has knowledge that he or she may be acting in violation of federal law, not an awareness that he or she is engaging in discrimination." *Johnson*, 996 F. Supp. at 321 (finding the key inquiry hinged on the employer's subjective state of mind and a task best left for the factfinder).

Reyes expressed concerns about the alleged discriminatory behavior towards him to Lordi, but to his knowledge, no investigation or further action was taken against the individuals perpetrating the discriminatory actions. (Doc. 8, ¶¶ 31-32). Additionally, just days after raising these concerns to Lordi, Reyes filed a charge of discrimination with the EEOC and was terminated two days after informing his managers. (Doc. 8, ¶¶ 33-35). Defendants are not correct in their assessment that "an open-door policy" (Doc. 15, at 20) would prevent an employer from being held vicariously liable, meaning that the managers were acting contrary to the employer's "good faith efforts to comply with Title VII." *Taylor v. Harrisburg Area Cmty. Coll.*, No. 1:12-CV-0169, 2012 WL 1886721, at *4, n. 3 (M.D. Pa. May 23, 2012) (quoting *Kant v. Seton Hall Univ.*, 279 F. App'x 152, 158 (3d Cir. 2008); *see also Kolstad*, 527 U.S. at 529. It would be premature, while taking these facts as true, to dismiss the claim for punitive damages at this point in litigation. He has sufficiently met the requirements to avoid dismissal. Accordingly, Defendants' motion to dismiss the claim for punitive damages is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **DENIED.** (Doc. 14). An appropriate Order follows.

**BY THE COURT:**

**Dated: August 24, 2026**

s/ Karoline Mehalchick

**KAROLINE MEHALCHICK**
**United States District Judge**